# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NESHAMINY CONSTRUCTORS, INC.** : | CIVIL ACTION |
| : | |
| **v.** : | |
| : | |
| **FEDERAL INSURANCE COMPANY and** : | NO. 11-7168 |
| **THE CHUBB CORPORATION** : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                   June 21, 2012

In this insurance coverage dispute, the parties have filed cross motions for summary judgment. The plaintiff, Neshaminy Constructors, Inc., ("Neshaminy") contends that the defendant, Federal Insurance Company ("Federal"), breached its insurance contract and denied Neshaminy's claim under the insurance policy in bad faith. It argues that the undisputed facts demonstrate that the claim was covered by the policy. Federal counters that the loss was not covered and was specifically excluded by the policy language.

The threshold question is whether the loss was covered. If it was, then the issue is whether Federal acted in bad faith in denying the claim. On the other hand, if the loss was excluded, Federal did not breach the contract and could not have acted in bad faith.

The facts are undisputed. The parties disagree what the policy language means.

Neshaminy contracted with the New Jersey Department of Transportation to reconstruct the transit bridge on Tuckahoe Road, Route 557, in Estell Manor, New Jersey. As a result of defective concrete forms, the bridge's beams constructed by Neshaminy were damaged, requiring repairs which resulted in cost overruns and delays. The defective concrete forms were designed and supplied by EFCO Corporation, Neshaminy's sub-contractor.

Neshaminy submitted a claim under the inland marine insurance policy, which Federal had issued. Relying on two policy exclusions, Federal denied the claim. Neshaminy brought this action for breach of the insurance contract and for bad faith.

For the purpose of determining whether there was coverage, the material facts are undisputed. The project caused damage to the bridge's beams. The losses were caused by the concrete forms defectively designed by Neshaminy's subcontractor. Neshaminy was covered by an inland marine insurance policy issued by Federal during the relevant period. The policy included exclusions for claims arising out of a design defect, and those arising out of faulty or defective workmanship, materials, maintenance or construction. Absent these exclusions, the losses are otherwise covered. Thus, we must determine whether the exclusions apply.

**Legal Standard**

The interpretation of an insurance contract is a question of law. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). The issue of whether a claim is within a policy's coverage or barred by an exclusion may be decided on a motion for summary judgment. *Bishops, Inc. v. Penn Nat'l Ins.*, 984 A.2d 982, 989 (Pa. Super. Ct. 2009) (quoting *Nationwide Mut. Ins. Co. v. Nixon*, 682 A.2d 1310, 1313 (Pa. Super. Ct. 1996)).

A court must give effect to the plain language of the insurance contract read in its entirety. *Am. Auto Ins. Co.*, 658 F.3d at 320 (citation omitted). When the policy language is ambiguous, the provision must be construed in favor of the insured. *Id.* (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999)); *401 Fourth St., Inc. v.*

*Investors Ins. Grp.*, 879 A.2d 166, 174 (Pa. 2005) (citing *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 352 (Pa. 1974)).  Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning.  *401 Fourth St., Inc.*, 879 A.2d at 171 (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)).  However, policy language may not be stretched beyond its plain meaning to create an ambiguity.  *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2008).

The insured has the initial burden of establishing coverage under the policy.  *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).  Conversely, when the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving, by uncontradicted facts, that the exclusion applies.  *Id.*; *Mistick, Inc. v. Nw. Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. Ct. 2002).  Policy exclusions are strictly construed against the insurer.  *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 207 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

**Discussion**

Federal issued Inland Marine Insurance Policy No. 0663-68-53, effective November 1, 2009 through November 1, 2010.  The Open Installation Floater provides coverage for physical loss or damage to "project works."  It provides:

> We will pay for direct physical loss or damage to project works caused by or resulting from a peril not otherwise excluded, not to exceed the applicable Limit Of Insurance for Project Works shown in the Declarations.[1]

The policy defines "project works" as "materials, supplies, machinery and equipment

---

[1] Open Installation Floater 3 (emphasis omitted).

which you own, or which are owned by others and for which you are legally liable, to be used in and become a permanent part of the construction, reconstruction, erection, expansion, fabrication, renovation or repair of an insured installation project."[2]

The policy excluded coverage for certain claims. Among the exclusions are the workmanship and materials exclusion and the defect-in-design exclusion. The workmanship and materials exclusion states: "This insurance does not apply to loss or damage (including the cost of correcting or making good) caused by or resulting from faulty or defective workmanship, materials, maintenance or construction."[3] The design exclusion reads: "This insurance does not apply to loss of or damage caused by or resulting from error, omission or deficiency in design, plan, specification or surveying."[4]

Neshaminy does not dispute that the loss was caused by a defect in design, and faulty workmanship and materials. It argues that the language of both exclusions is ambiguous because it does not specifically define "to whom the exclusion applies," leaving three possible interpretations. The three interpretations, according to Neshaminy, are that the exclusion applies to defects, and faulty workmanship and materials, caused by: (1) only Neshaminy; (2) only by suppliers or subcontractors; or (3) by both Neshaminy and its suppliers or subcontractors.

Neshaminy argues that because the purported ambiguity was created by Federal, the drafter of the policy, the exclusion must be construed in favor of Neshaminy, the insured, and against Federal. In that instance, according to Neshaminy, the provision must

---

[2] Open Installation Floater 18 (emphasis omitted).

[3] Open Installation Floater 11.

[4] Open Installation Floater 6.

be interpreted to apply only to defects and designs by the insured, and does not apply to those made by third parties, such as suppliers and contractors.

The fact that the provisions do not identify who is responsible for the defect does not help Neshaminy. On the contrary, the omission of a limitation on the scope of the exclusions supports the conclusion that all design and faulty workmanship defects – no matter who made them – are excluded from coverage. The relevant exclusions apply to the cause of the damage to the project, not who caused the damage. Thus, the unambiguous language of the exclusions includes within their scope losses caused by any design defect or any faulty workmanship and materials.

Construing the exclusions strictly against Federal does not permit us to rewrite the policy terms. The language is plain and unambiguous. The only reasonable interpretation is that the exclusions apply to losses or damages caused by design defects and to faulty workmanship and materials resulting from the acts or omissions of anyone, including either the insured or its suppliers and subcontractors.

Neshaminy argues that this interpretation frustrates its reasonable expectations and results in illusory coverage.

### Reasonable Expectations

The guiding principle in interpreting an insurance contract is to effectuate the reasonable expectations of the insured. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted); *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331 (Pa. Super. Ct. 2010) (citation omitted). Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may

prevail over the express terms of the contract.  *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir.1994); *see also Safe Auto Ins. Co.*, 991 A.2d at 331 ("[A] court's decision to look beyond the policy language is not erroneous under all circumstances." (citation omitted)).  Nonetheless, the language of the insurance contract serves as the best evidence of the parties' reasonable expectations.  *Safe Auto Ins. Co.*, 991 A.2d at 332 (quoting *Allstate Ins. Co. v. McGovern*, No. 07-2486, 2008 WL 2120722, at *2 (E.D. Pa. May 20, 2008)).[5]

Despite the absence of language limiting the scope of the workmanship and materials and defect-in-design exclusions, Neshaminy argues that it had a reasonable expectation that the exclusions apply only to it, not its subcontractors.  Under this interpretation, Neshaminy could avoid the exclusions simply by relying on subcontractors to complete the project, requiring Federal to cover the cost of damages caused by subcontractors selected and overseen by Neshaminy.  Neshaminy's proffered expectation is based on an unreasonable interpretation of the unambiguous exclusions.

### Illusory Coverage Doctrine

Neshaminy also argues that interpreting the relevant exclusions to extend to the

---

[5] We acknowledge that, at times, the Pennsylvania Superior Court has ruled out the use of the reasonable expectations doctrine when the insurance contract is clear and unambiguous. *See Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1166 n.11 (Pa. Super. Ct. 2009) ("However, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.") (citations and quotations omitted); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007) ("An insured, however, may not complain that its reasonable expectations have been frustrated when the applicable policy limitations are clear and unambiguous."). If we were to follow this approach, the reasonable expectations inquiry would be at an end because the relevant exclusions are clear and unambiguous. However, based on the Superior Court's more recent statement of the doctrine in *Safe Auto Insurance Co.*, 991 A.2d at 331, we shall determine whether Neshaminy's expectations are reasonable.

work of its subcontractors would render its coverage under the policy illusory. The Pennsylvania Supreme Court implicitly recognized the existence of the illusory coverage doctrine in *401 Fourth St., Inc.*, 879 A.2d at 174 n.3. A coverage provision is illusory when it is negated by an exclusion under a reasonable set of circumstances. *Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 WL 2048354, at *4 (W.D. Pa. May 12, 2008); *see also 401 Fourth St., Inc.*, 879 A.2d at 174 n.3 (holding that coverage would be rendered illusory and contrary to the intent of the parties if an exclusion was interpreted to negate a coverage provision).

Neshaminy argues that the entire policy is illusory because the exclusions "would exclude damage or loss resulting from every act that can be done by anyone in connection with a construction project."[6] This argument is contradicted by the policy coverage. The policy covers several enumerated fortuitous events that are not the result of deficiency in design or faulty or defective workmanship and materials. Neshaminy's illusory coverage argument is without merit.

### Bad Faith

Soon after Neshaminy presented its claim to Federal, the latter put Neshaminy's subcontractor, EFCO on notice of a potential subrogation claim.[7] Neshaminy reads this letter as an admission by Federal that Neshaminy's claim was covered under the policy. It contends that the later denial of the claim was made on the basis of a bad faith

---

[6] Reply Mem. of Pl. 2.

[7] Pl.'s Cross Mot. for Partial Summ. J. Ex. G, at 1.

unreasonable interpretation of the policy.  In other words, Neshaminy argues that Federal sought a way to avoid paying the claim.

The policy language, not the insurer's initial reaction to a claim before an investigation is concluded, controls.  By sending a prophylactic subrogation letter to a third party, Federal did not waive its rights under the policy.  Nor did it reform the contract.

Because there is no coverage under the contract for Neshaminy's claim, there can be no bad faith.  Therefore, we shall grant summary judgment in favor of Federal.